## Albert Gehrt, Appellant; v. The Collins Plow Company et al., Appellees.

1. CORPORATIONS—*when chancery will not order declaration of dividend.* Unless a very strong case is made a court of equity will not order the directors of a corporation to declare a dividend inasmuch as equity has no jurisdiction unless fraud or breach of trust is involved.

2. CORPORATIONS—*discretion of directors as to dividends.* The declaration of a dividend from a surplus or a division of profits is within the discretionary powers of the directors and in the exercise of their discretion will not be controlled or interfered with by the courts unless they act oppressively or unreasonably.

Bill in equity. Appeal from the Circuit Court of Adams' county; the Hon. A. AKERS, Judge, presiding. Heard in this court at the May term, 1909. Affirmed. Opinion filed May 19, 1910.

L. H. BERGER, for appellant.

GOVERT & LANCASTER, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal from a decree sustaining a demurrer to and dismissing for want of equity, a bill filed by appellant against appellees the material averments of which are substantially the following:

That complainant was and had been since June 1, 1889, the owner and holder of thirty shares of stock in The Collins Plow Company of the par value of $100 each; that said company was a corporation organized in the year 1881, under the laws of Illinois, with a capital of $75,000 and was authorized by its charter to manufacture agricultural implements and machinery, at Quincy, Illinois; that its charter would expire in the year 1911; that William H. Govert, at the time of the filing of the bill, was president, J. W. Brown secretary, and William N. Brown treasurer, all three of said officers constituting the board of directors of said corporation. That since June 1, 1889, said corporation had been

manufacturing, dealing in and selling plows, cultivators and kindred implements, at its manufacturing plants in said city of Quincy and elsewhere. That the shares of stock of said corporation, by reason of its earnings, profits and the increase of its assets, had increased from the par value of $75,000 to the book value of the sum of $236,000; that from the date on which complainant received his said stock to the present time, no dividend had ever been made or declared upon the same; that William H. Govert and J. W. Brown owned, held and controlled the majority of the stock of said company, the said William H. Govert acting as president and manager thereof, and the said J. W. Brown as secretary, and both the said Govert and the said Brown were two of the three members of the directory board of said company and exercised the full control of the affairs of said company; that for the past eighteen years no stockholders' meeting had been held by said company, nor had any statement of the condition and the affairs of said company been made to the stockholders thereof, although by the by-laws of said corporation it was provided that annual meetings of stockholders should be held on the first day of August in each year, excepting Sundays and legal holidays. That complainant, being desirous of ascertaining the true value of said stock by making a personal inspection and examination into the affairs and condition of said company, caused to be served on the said corporation and William H. Govert, its president, and J. W. Brown, its secretary, notices requesting permission to examine the records, books and accounts of said company, but that notwithstanding said request, the said company and the said Govert and Brown had declined and refused, and still refused to permit complainant or his attorney to make such examination or inspection as was in and by said notices requested, contrary to the provisions of the Statute of Illinois in such cases made and provided. That by reason of said refusal complainant was unable to ascertain the true condition and affairs of said company. That the said company, by and through the management and control of said Govert and said Brown, had accumulated a large surplus, to the injury

of complainant, as would more fully and at large appear by the following statement, purporting to be a balance sheet for September 30, 1907, furnished to complainant during the month of June 1908, by said company:

### Balance Sheet September 30, 1907.

#### Assets.

| | | |
|---|---:|---:|
| Cash, | $ 3,039.15 | |
| Bills Receivable, | 34,038.51 | |
| Accounts Receivable, | 62,758.89 | |
| Interest Receivable, | 268.90 | $100,104.85 |

| | | |
|---|---:|---:|
| Stock at Factory, Mercantile House and other Transfer Points outside of States, | | 135,355.48 |
| Real Estate (Last statement) | 69,672.24 | |
| (Additional Investments), | 7,345.16 | 77,017.40 |

| | |
|---|---:|
| Machinery and Tools, | 17,773.79 |
| Office furniture and fixtures at Factory, Mercantile House and other Sales Branches, | 1,645.17 |
| Horses, Harness, Wagons and Vehicles in use, | 1,275.00 |
| Other assets, | 996.10 |
| | $334,047.79 |

#### Liabilities.

| | | |
|---|---:|---:|
| Accounts Payable, (Not due) | $35,482.44 | |
| Bills Payable (Borrowed money) | 61,353.10 | $ 96,835.54 |

| | | |
|---|---:|---:|
| Commission Certificates, (Not due and payment contingent on payment of certain Bills Receivable), | | 1,167.83 |
| Capital Stock, | $ 75,000.00 | |
| Surplus, | 161,044.42 | 236,044.42 |
| | | $334,047.79 |
| Amount of assets in excess of liabilities, | | $236,044.42 |

That the surplus of said corporation exceeded the sum of $161,000 and that the assets of said corporation over and above all liabilities outstanding, excepting therefrom the capital stock, amounted to over the sum of $236,000 and that said corporation was then and had been adding to its surplus over and above the sums last above stated by its increase of business and profits, and that the net profits of said corporation exceeded the sum of 180,000, and that the business of said corporation was then in a prosperous condition, and the profits therefrom were growing larger and greater.  That complainant had upon numerous and various occasions requested the said Govert to have the company declare a dividend upon its said stock, but that the said Govert had refused to permit or declare a dividend.  That complainant had never been able to obtain access to the books and records of said corporation to ascertain who constituted the entire board of directors of said corporation, but that he was informed that the said Govert, J. W. Brown and William N. Brown did constitute the board of directors of said company, and that if any other person belonged to or constituted said board of directors, such fact was unknown to and withheld from complainant.  That on many and divers times between the years 1890 and 1908, he has asked the said members of said board, or directors of said board, to declare a dividend upon the stock of said corporation held by him, but that each of said members of said board refused, and still persisted in refusing to declare a dividend on his said stock or to the stockholders on their stock held in said corporation.  That said corporation was carried on by the said Govert and the said Brown in a collusive manner with the intent of manipulating the affairs of said corporation to the detriment and injury of complainant, and to deprive him of the value of his said holdings and to prevent him from receiving any dividends, and to force him to sacrifice his said stock at a great loss.  That the said Govert and the said Brown were and had been combining and confederating together in the manipulation and control of the business of said company so that they then owned nearly all the stock issued by said company, and by the policy of

not declaring dividends and not holding meetings of stockholders as is required by the by-laws of said company, no one could ascertain the true value or then present condition of the plant or stock, nor could said stock be sold on the open market. That the price and value of said stock could be and was fixed by said Govert and said Brown, who owned and controlled said company and its board of directors, at any price they pleased. That said Govert was a person of abundant means and was controlling this said company's affairs with the sole and only purpose of utilizing its assets to his own benefit and to the exclusion of complainant's rights. That the surplus of said company was sufficient to declare a dividend of one hundred per cent. on its stock, and leave a balance of over $100,000 on hand after making a dividend of $100 per share. That complainant believed that the assets of said corporation had increased since the making of the statement referred to as Exhibit "D," and that the same were hoarded by said corporation to his detriment and injury.

The prayer for relief is that "The Collins Plow Company," William H. Govert, J. W. Brown and William N. Brown, directors, and the directors of the said Collins Plow Company whoever they may be, may be decreed to declare and pay a dividend on the stock of said company equivalent to a sum which will not impair its capital or endanger its creditors, and for such other and further relief in the premises as equity may require, etc.

The vital question raised by this appeal, is whether or not the facts alleged in the bill are sufficient to warrant the intervention of a court of equity to enforce the declaration of a dividend by the board of directors of the corporation. Under the conclusions reached by us, it will be unnecessary to consider or determine whether or not the bill is subject to special demurrer for multifariousness or impertinence, or whether a sufficient or proper demand upon the board of directors that they declare a dividend is therein alleged.

It requires a very strong case to induce a court of equity to order the directors to declare a dividend, inasmuch as equity has no jurisdiction unless fraud or a breach of trust is in-

volved. Cook on Cor. No. 545; 2 Beach on Pr. Corp. No. 601; Hunter v. Roberts, 83 Mich. 63; Burden v. Burden, 159 N. Y. 287; Greeff v. E. L. Society, 160 N. Y. 19.

The declaration of a dividend from a surplus, or the division of profits, is within the discretionary powers of the directors, and in the exercise of their discretion they will not be controlled or interfered with by the courts unless they act oppressively or unreasonably. Cook on Cor. 3545; Clark on Cor. 347; Morawetz on Pr. Cor. 447; Taylor on Pr. Cor. 3562-3, 2 Beach on Pr. Cor. 3602; Hunter v. Roberts, 83 Mich. 63; Wolfe v. Underwood, 96 Ala. 329; Pratt v. Pratt, 33 Conn. 446; Beveridge v. R. R. Co., 112 N. Y. 1; Greeff v. E. L. Society, 160 N. Y. 19. In determining the disposition to be made of the gains of a business, the directors are invested with a very liberal discretion. They may reserve of them whatever their judgment approves as necessary or judicious for repairs and improvements, and to meet contingencies, both present and prospective (Park v. Grant Locomotive Works, 40 N. J. Eq. 114), and may also in the exercise of a sound discretion, increase the assets of a company beyond their nominal amount by retaining and accumulating profits or earnings and applying them to the purchase of property or other purposes not beyond the corporate powers. 2 Beach on Pr. Cor. 3601; March v. Ry. Co., 43 N. H. 515; Pratt v. Pratt, 33 Conn. 446; Burden v. Burden, 159 N. Y. 287.

If there is a large surplus and in their opinion the interests of the corporation make it necessary or advisable, they may expend the same in improvements or in extending the business of the corporation. Clark on Cor. 347; Wolfe v. Underwood, 96 Ala. 329; McNab v. Mfg. Co., 62 Hun, 18. To authorize the intervention of a court to decree a dividend, it must appear that there are surplus profits to divide and that they can be separated from the necessary working capital without detriment to the interests of the stockholders or the prosperity of the business of the company. Hunter v. Roberts, 83 Mich. 63; Park v. Grant Locomotive Works, 40 N. J. Eq. 114.

By the bill under consideration it is not made to appear either by definite averments or by the statement "Exhibit D," that the amount of earnings on hand is in excess of what the directors, in the fair exercise of their discretion, could regard as necessary or proper to be retained for use in the transaction of the business, or to meet contingencies, present or prospective. It is not alleged that any of the funds have been diverted from the objects for which the corporation was formed, nor is it shown that the directors are undertaking to expand the scope of the enterprise beyond the limits contemplated when it was started. The bill does not show that the affairs of the corporation are in such a condition that there is no occasion or necessity to withhold the accrued profits in order to meet legitimate demands and requirements of the business, to provide for its continued operation and future prosperity. For aught that appears the course pursued by the directors may be for the best interests of all the stockholders, and the one suggested by business foresight and sagacity. The bill wholly fails to show that the directors, in not declaring a dividend, do not fairly exercise their judgment or discretion in the interest of the corporation; or that they wilfully abuse their authority on the subject, or are acting in bad faith towards any of the stockholders or in disregard of their duties in the premises. Wolfe v. Underwood, supra.

The allegations of the bill as to the conduct of Govert and J. W. Brown, are in no sense averments of facts, and if they were, do not connect the board of directors with such conduct. The bare charge that these defendants are conducting the company's affairs in an unconscientious and collusive manner, or that they are combining and confederating together, in the manipulating and controlling the business, without stating the means used by them, or stating any specific acts of wrong-doing, is not sufficient wherewith to charge either of them or the board of directors with any fraudulent conduct in the transaction of the company's business.

For these reasons, we are of opinion the bill is obnoxious

to a general demurrer and that the chancellor properly so held.

· The decree of the circuit court is accordingly affirmed.

*Affirmed.*